## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 18-24995-CV-GAYLES/OTAZO-REYES

RAMONA MATOS RODRIGUEZ,
TATIANA CARBALLO GOMEZ,
FIDEL CRUZ HERNANDEZ, and
RUSSELA MARGARITA RIVERO SARABIA,

      Plaintiffs,

v.

PAN AMERICAN HEALTH ORGANIZATION,
JOAQUIN MOLINA, ALBERTO KLEIMAN,
INDIVIDUAL DOES NO. 1-10,

      Defendants.

_____/

## ORDER

THIS CAUSE came before the Court upon Defendant Pan American Health Organization's ("PAHO") Motion to Transfer this Action to the District of Columbia (hereafter, "Motion to Transfer") [D.E. 18]. This matter was referred pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 12]. The undersigned held a hearing on this matter on April 15, 2019 [D.E. 38]. For the reasons stated below, the Motion to Transfer is DENIED.

### PROCEDURAL AND FACTUAL BACKGROUND

On December 26, 2018, Plaintiffs Ramona Matos Rodriguez, Tatiana Carballo Gomez, Fidel Cruz Hernandez, and Russela Margarita Rivero Sarabia ("Plaintiffs") filed their First Amended Class Action Complaint alleging that Defendants PAHO, Joaquin Molina ("Molina"), Alberto Kleiman ("Kleiman"), and Individual Does No. 1-10 (collectively, "Defendants") had

committed violations of the Trafficking Victims Protection Act ("TVPA") and the Racketeering and Corrupt Influenced Organizations Act ("RICO").  <u>See</u> Am. Compl. [D.E. 9].

Plaintiffs allege that they are Cuban physicians who worked in Brazil from 2013 to 2017 in a program, Mais Medicos, that was established and administered by PAHO, a non-profit public-health organization.  <u>Id.</u> at 2-3.  Defendants Kleiman and Molina are PAHO officials alleged to have conspired with Individual Does No. 1-10 to create the Mais Medicos program. <u>Id.</u> at 1-2.  Plaintiffs allege that they were forced into participating in the program and that they were victims of forced labor and human trafficking in Brazil.  <u>Id.</u>  Plaintiffs allege that PAHO entered into agreements with the Sociedad Mercantil Comercializadora de Servicios Medicos Cubanos S.A. (hereafter, "CSMC") to traffic Cuban medical professionals into Brazil.  <u>Id.</u> at 3. Plaintiffs allege that they were paid 10% or less of the fees the Brazilian Government paid PAHO for their services, and that PAHO is responsible for compensating Plaintiffs the full amounts.  <u>Id.</u> at 2.  Plaintiffs further allege that more than 10,000 Cuban doctors and other medical and health professionals were trafficked by PAHO between 2013 and the present, and that an estimated 3,500 of those Cuban doctors currently reside in the United States.  <u>Id.</u> at 3. Plaintiffs allege that PAHO has collected over $75 million since 2013 for its conduct related to the Mais Medicos program. <u>Id.</u> at 1.

Plaintiffs rely on Title 28, United States Code, Section 1391(c)(2) (hereafter, "Section 1391(c)(2)") for laying venue in the Southern District of Florida, on the basis that Defendants are subject to personal jurisdiction in this District. <u>Id.</u> at 6.

On February 25, 2019, PAHO filed the instant Motion to Transfer, claiming that it has absolute immunity as an international organization and arguing that the District of Columbia is the only proper venue for this action under Title 28, United States Code, Section 1391(f)

(hereafter, "Section 1391(f)").  See Motion to Transfer [D.E. 18].  Accordingly, PAHO seeks transfer of this action to the District of Columbia pursuant to Title 28, United States Code, Section 1406(a) (hereafter, "Section 1406(a)").  Alternatively, PAHO argues that the case should be transferred to the District of Columbia pursuant to Title 28, United States Code, Section 1404(a) (hereafter, "Section 1404(a)").  Id.  On March 22, 2019, Plaintiffs filed their Memorandum of Law in Opposition to PAHO's Motion to Transfer (hereafter, "Response") [D.E. 26].  PAHO replied on March 29, 2019 (hereafter, "Reply") [D.E. 29].

## APPLICABLE LAW

A. Venue Provisions

Section 1391(c)(2) provides:

Residency.--For all venue purposes--
. . .
(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business.

28 U.S.C. § 1391(c)(2).

Section 1391(f) provides:

Civil actions against a foreign state--A civil action against a foreign state as defined in section 1603(a) of this title may be brought--

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

3

(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. 1391(f).

B. Immunities

The International Organizations Immunities Act ("IOIA") provides:

International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

22 U.S.C. § 288a(b).

C. Venue Transfer Provisions

Section 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"[T]he decision whether to transfer a case, whether it be pursuant to § 1404 or § 1406, is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion." Patent Holder LLC v. Lone Wolf Distribs., Inc., No. 17-23060-Civ-Scola, 2017 WL 5032989, at *3 (S.D. Fla. Nov. 1, 2017) (citing Pinson v. Rumsfeld, 192 F. App'x 811, 817 (11th Cir. 2006); Nowell v. Dick, 413 F.2d 1204, 1212 (5th Cir. 1969)).

4

## TRANSFER UNDER SECTION 1406(a)

Section 1406(a) applies to an action filed "in a district in which venue or personal jurisdiction is improper." Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir. 1985). Plaintiffs allege that venue is proper in this district, under Section 1391(c)(2), because PAHO is subject to this Court's personal jurisdiction. See Am. Compl. [D.E. 9 at 5-6]. Plaintiffs contend that long arm personal jurisdiction exists under Florida Statute § 48.193(1)(a)(6) because Defendants caused injury to Plaintiffs in Florida while conducting service activities in Florida. See Response [D.E. 26 at 4].[1] Specifically, Plaintiffs allege:

> PAHO caused injury to Plaintiff Matos and other Cuban doctors in Florida by wrongfully permitting Cuba and CMS[C] to deny them the portion of their compensation deposited in Cuban bank accounts, at a time when PAHO was engaged in service activities in Florida through its University of Miami Medical School programs.

See Am. Compl. [D.E. 9 at 5-6]. PAHO is not challenging personal jurisdiction at this juncture.

PAHO claims that it has absolutely immunity because the IOIA qualifies PAHO as an international organization that is entitled to the same immunity as a foreign government. See Motion to Transfer [D.E. 18 at 1]. PAHO further argues that the Foreign Sovereign Immunities Act ("FSIA") requires that the case be transferred to the District of Columbia because Section 1391(f) provides the exclusive venue provision for lawsuits against foreign governments.

PAHO first relies on Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984), for the proposition that state sovereign immunity encompasses both whether and where a

---

[1] Florida Statute § 48.193(1)(a)(6) provides, "A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: . . . Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: a. The defendant was engaged in solicitation or service activities within this state; or b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)(6).

sovereign can be sued in the context of the Eleventh Amendment. 465 U.S. at 99. PAHO further relies on Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299 (1990), as clarifying that the "whether and where" language from Pennhurst referred specifically to venue. In Feeney, the Supreme Court discussed the Eleventh Amendment in relation to a statutory consent-to-suit provision in a bi-state compact for the Port Authority of New York and New Jersey that allowed the Port Authority of New York and New Jersey to be sued in federal court, thereby waiving New York State's immunity from suits in federal court for claims under the statute. 495 U.S. at 307-08. However, the Pennhurst language quoted by the Supreme Court in Feeney regarding venue and sovereign immunity was in the context of this specific New York statute whereby New York State created its own consent to suit in a federal venue, thus abrogating its Eleventh Amendment immunity from suit in a federal court. PAHO also relies on Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165 (1939), a case that referred to venue protection in federal law as an immunity. 308 U.S. at 168. Neirbo involved a suit based on diversity of citizenship that was brought in a district where no party resided. Id. at 167. Here, one of the Plaintiffs resides in this district, and Plaintiffs' case is based on federal question jurisdiction. Therefore, Pennhurst, Feeney and Neirbo do not present analogous situations to this case.

Plaintiffs rely on the Supreme Court's recent decision in Jam v. Int'l Fin. Corp., 139 S. Ct. 759 (2019), to contend that, even if PAHO were generally immune, it has no immunity in this case. In Jam, the Supreme Court stated that "a foreign government may be subject to suit under one of several statutory exceptions," including "in connection with its commercial activity that has a sufficient nexus with the United States." 139 S. Ct. at 766. Plaintiffs argue that PAHO's Mais Medicos program qualifies as such a commercial activity, which would eliminate any immunity. See Response [D.E. 26 at 3-4]. PAHO responds by arguing that the Supreme Court

indicated there may be additional immunities available for international organizations that have yet to be determined; and that many novel issues will arise in the aftermath of the Jam decision that would best be dealt with by the District of Columbia because of its unique expertise with international organizations.  See Reply [D.E. 29 at 9-10].  However, this argument does not support a venue transfer under Section 1406(a).

Regardless, Section 1391(f) states that a civil action against a foreign state "may" be brought in the District of Columbia for an action against "a foreign state or political subdivision thereof." 28 U.S.C. § 1391(f).  Contrary to PAHO's argument, the statutory language "may" is not the equivalent of "shall."  Therefore, this district remains a proper selection for venue for this action pursuant to Section 1391(c)(2); hence, the case need not be transferred under Section 1406(a). Manley, 755 F.2d at 1467.

**TRANSFER UNDER SECTION 1404(a)**

As an alternative, PAHO seeks transfer to the District of Columbia under Section 1404(a).[2]  "The purpose of § 1404(a) is to prevent waste of time and money, and to protect parties, witnesses, and litigants from unnecessary inconvenience and expense." J.I. Kislak Mort. Co. v. Conn. Bank & Trust Co., 604 F. Supp. 346, 347 (S.D. Fla. 1985).  The standard for transfer under § 1404(a) provides broad discretion to the trial court.  See Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1281 (S.D. Fla. 2001).

---

[2] This request is predicated on the premise that venue is proper in this district.  See 28 U.S.C. § 1404(a). As noted above, Plaintiffs' laying of venue here relies on the existence of personal jurisdiction, which PAHO has not contested.  See 28 USC § 1391(c)(2).  At the April 15th hearing, PAHO stated its intention to contest personal jurisdiction should its transfer be denied.  The undersigned cautioned PAHO at the April 15th hearing that it may have failed to properly preserve a personal jurisdiction challenge by proceeding in this fashion under the circumstances of this case.

7

"Whether a transfer is appropriate depends on two inquiries: (1) whether the action 'might have been brought' in the proposed transferee court[3] and (2) whether various factors are satisfied so as to determine if a transfer to a more convenient forum is justified." Id. at 1281. In regard to the second inquiry, the United States Court of Appeals for the Eleventh Circuit has delineated nine relevant factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). While any party, including plaintiff, may move for a transfer under Section 1404(a), see I-T-E- Circuit Breaker Co. v. Regan, 348 F.2d 403 (8th Cir. 1965), "the movant bears the burden of demonstrating the propriety of transferring the action." Poncy v. Johnson & Johnson, 414 F. Supp. 551, 553 (S.D. Fla. 1976). A plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted).

1. Convenience of the Witnesses

"The convenience of the witnesses is probably the single most important factor in transfer analysis." Filtalert Corp. v. IBM Corp., No. 15-22845-Civ-Gayles, 2015 WL 9474640, at *2 (S.D. Fla. Dec. 29, 2015) (quoting In re Genentech, Inc., 566 F.3d 1338, 1343 (Fed. Cir. 2009)).

PAHO argues that the majority of U.S.-based witnesses in this case are defense witnesses located in the District of Columbia, whereas the plaintiffs "are scattered and mostly outside

---

[3] Plaintiffs do not dispute that this action could have been brought in the District of Columbia. See Response [D.E. 26 at 10].

Florida." See Motion to Transfer [D.E. 18 at 15].  PAHO submits that all its U.S.-based employees, and thus witnesses, work at its headquarters in Washington, DC.  Specifically, PAHO has seven potential witnesses that reside in Washington, DC, and the remainder are located outside the country.  See Declaration of Gerald Anderson (hereafter, "Anderson Declaration") [D.E. 18-1 at 3].  However, the significance of this factor for PAHO "is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010), citing Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001).

Plaintiffs allege that their class members are estimated at 10,000 Cuban doctors, with 3,500 of these doctors living in the United States, and approximately 1,500 of them residing in South Florida.  See Am. Compl. [D.E. 9 at 3].  Additionally, Plaintiff Ramona Matos Rodriguez ("Matos Rodriguez") lives in Miami, Florida.  Of the remaining three plaintiffs, two reside in Texas and one in Kentucky.  Matos Rodriguez submitted a declaration stating that at least 1,300 Cuban doctors who escaped from the Mais Medicos program came through the Miami International Airport and that she believes most of them are still in the area.  See Declaration of Ramona Matos Rodriguez (hereafter, "Matos Rodriguez Declaration"), Exhibit 1 to Response [D.E. 26 at 23].  She further declared that she "was contacted by several other Cuban doctors from the Mais Medicos program who now live in Miami who want to support the case.  There are at least six [doctors] who [she is] in current contact with who are prepared to testify." Id.

The majority of witnesses are alleged to be located outside of the United States and are given no consideration as their ability to travel to either forum will be inconvenient.  Given that PAHO's seven U.S.-based witnesses are employees under its control, and Plaintiffs have one

named Plaintiff residing in this forum, with the likely probability of additional witnesses in this district, including six witnesses known to Matos Rodriguez, this factor weighs in favor of Plaintiffs.

2. Location of Relevant Documents and the Ease of Access to Proof

PAHO contends that this factor weighs in its favor due to its headquarters being in the District of Columbia. However, considering modern technology and the lack of any cited evidence that the documents would not be easily transferable, this factor is neutral. "[G]iven that the electronic storage and transfer of documents between litigants has become the norm, many courts find that the location of relevant documents should be given little weight in the transfer analysis." Filtalert, 2015 WL 9474640, at *3 (citing Microspherix LLC v. Biocompatibles, Inc., No. 9:11-cv-80813-KMM, 2012 WL 243764, *3 (S.D. Fla. Jan. 25, 2012)). Compare EcoServices, LLC v. Certified Aviation Services, LLC, No. 16-cv-21454, 2016 WL 4433169, at *4 (S.D. Fla. Aug. 22, 2016) (finding this factor in favor of transfer where sources of proof included a physically large system that washed jet engines).

3. Convenience of the Parties

Matos Rodriguez lives in Miami, Florida. The three remaining Plaintiffs reside in Texas or Kentucky. Matos Rodriguez's declaration avers that there are at least six Cuban doctors who reside in Miami, Florida, and these individuals would be witnesses or putative class action plaintiffs. See Matos Rodriguez Declaration [D.E. 26 at 22-29]. PAHO is headquartered in Washington, DC, where all of its U.S.-based employees can be found. Where a transfer "merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." Mason, 146 F. Supp. 2d at 1361, quoting Eye Care Int'l, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000). Here, it would be equally onerous for Plaintiffs, and any potential

putative class members, to travel to the District of Columbia as it would be for PAHO to travel to this district.  Therefore, this factor is neutral.

   4.  Locus of Operative Facts

   Plaintiffs allege that they were trafficked between Cuba and Brazil.  These are the two locations where the majority of injury allegedly occurred.  "Where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."  Motorola Mobility, Inc. v. Microsoft Corp., 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (quoting Windmere Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985)).  However, Plaintiffs allege that Matos Rodriguez was injured in this district when she was deprived of payment after serving under PAHO.  By contrast, no events or injuries are alleged to have occurred in the District of Columbia.  Therefore, while this factor is mostly neutral, it weighs slightly in Plaintiffs' favor.

   5.  Availability of Process to Compel Unwilling Witnesses

   This factor is neutral.  Neither party has identified any U.S.-based witnesses who would require this Court's subpoena power.  The remainder of witnesses allegedly reside outside of the United States.

   6.  Relative Means of the Parties

   Plaintiffs contend that they, and most of the putative class members, are living at the economic margins and would not be able to bring this class action if it were not in this district.  Matos Rodriguez states that she makes $630 every two weeks, that the other Cuban doctors she knows are primarily working blue collar jobs, and that she and the other Cuban doctors would not be able to afford to travel to or obtain lodging in Washington, DC.  See Matos Rodriguez Declaration [D.E. 26 at 23].  She further states that the three remaining named plaintiffs would

not be able to afford travel and lodging in Washington, DC, but that they would be able to find lodging for free with friends or family in this district. Id. at 24. PAHO responds that it is a non-profit public-health organization with less means than any private organization. "In the class action context, this factor is generally irrelevant." Maxon v. Sentry Life Ins. Co., No. 6:17-cv-1569-Orl-40TBS, 2018 WL 3850011, at *4 (M.D. Fla. Apr. 11, 2018) (finding this factor neutral in a class action where the plaintiff was represented by four law firms against the defendant, a life insurance company). This is a class action with both sides alleging to have limited funds. The undersigned finds this factor to be neutral.

7. Forum's Familiarity with the Governing Law

PAHO argues that the District of Columbia has more expertise in immunity under the IOIA than this district. However, PAHO has yet to formally raise this defense, and the case otherwise revolves around the TVPA and other federal laws. PAHO further argues that the District of Columbia is more experienced with dual immunity cases and cases involving international organizations in general. "The factor of a forum's familiarity with the governing law makes no difference in evaluating a transfer [where] the complaint alleges violations of federal statutes, and common laws without specification of any state's laws. Thus, both districts would be equally knowledgeable regarding the governing law." Trinity, 761 F. Supp. 2d at 1329. Here, both courts would be analyzing federal law and either court would be competent. Therefore, this factor does not weigh in favor of transfer.

8. Weight Accorded a Plaintiffs' Choice of Forum

Plaintiffs' choice of forum is given less deference due to its nature as an alleged nationwide class action with the majority of the operative facts having occurred outside this district. Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998), citing Koster v.

Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947).  However, "[e]ven if the chosen forum is entitled to less deference, the court must still find that other factors 'clearly outweigh[ ]' the chosen forum." Id. at 1359.   One of the named plaintiffs does live in the Southern District of Florida; further, it is Plaintiffs' contention that she was injured by PAHO while a resident here. Plaintiffs additionally posit that many putative class members and witnesses reside in this district, with an estimated number of 1,500 residents in South Florida out of a class of approximately 3,500.  See George v. Kraft Foods Glob., Inc., No. 06-cv-798-DRH, 2007 WL 853998, at *6 (S.D. Ill. Mar. 16, 2007) (The likelihood that many members of a proposed class reside in a district "is not a factor the Court normally considers in evaluating the propriety of transfer . . . absent some evidence" otherwise.)  Although this information warrants little to no consideration, there is evidence that there are additional witnesses in this district.   The declaration of Plaintiff Matos Rodriguez states that there are six witnesses who reside in Miami and that the remaining named plaintiffs each have friends or family in this district that would facilitate their ability to travel and lodge here for trial-related purposes.  See Matos Rodriguez Declaration [D.E. 26 at 22-24].   This would bring Plaintiffs' Miami-based witnesses to approximately seven, whereas PAHO has also claimed they have seven witnesses based in Washington, DC.  See Anderson Declaration [D.E. 18-1].

Therefore, Plaintiffs' choice of forum is given some deference, and the undersigned does not find that PAHO has met its burden in showing that there are other factors that clearly outweigh the laying of venue in this district. Gould, 990 F. Supp. at 1359.

9.   Trial Efficiency and the Interests of Justice in Totality

Although the majority of operative events occurred outside of the United States, Plaintiffs allege and provide evidence that there are witnesses that reside in the Southern District of Florida

and that at least one alleged injury arose while a named Plaintiff resided here.  Accordingly, it would not be unsuitable for a Florida jury to hear this case.  Additionally, both districts have an equal interest in trial efficiency and reduction of case load.  This final factor thus weighs against transfer.

Based on the foregoing analysis, the undersigned finds that a transfer to the District of Columbia under Section 1404(a) is not warranted in this case.

## CONCLUSION

After consideration of PAHO's arguments for transfer to the District of Columbia under Section 1406(a) and Section 1404(a), it is

ORDERED AND ADJUDGED that the Motion to Transfer is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day May, 2019.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:     United States District Judge Darrin P. Gayles
        Counsel of Record