UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-24995-GAYLES

RAMONA MATOS RODRIGUEZ,
TATIANA CARBALLO GOMEZ,
FIDEL CRUZ HERNANDEZ, and
RUSSELA MARGARITA RIVERO
SARABIA,

        Plaintiffs,

v.

PAN AMERICAN HEALTH
ORGANIZATION, JOAQUIN MOLINA,
ALBERTO KLEIMAN, INDIVIDUAL
DOES NO. 1–10,

        Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant's Objections to, and Appeal from, Magistrate Judge's Denial of Motion to Transfer this Action to the District of Columbia (the "Objections") [ECF No. 42]. The Court has reviewed the briefing and the record and is otherwise fully advised. For the reasons that follow, the Court shall sustain the Objections and grant Defendant's Motion to Transfer this Action to the District of Columbia [ECF No. 18].

## BACKGROUND

### I.    Factual Allegations

This is an action brought under the Trafficking Victims Protection Act, 18 U.S.C. § 1589(a), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), against an international organization that raises a first impression question of whether the venue restrictions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1610

("FSIA"), as codified in 28 U.S.C. § 1391(f), extend to international organizations as part of their congressionally-afforded immunity from suit.

Plaintiffs Ramona Matos Rodriguez, Tatiana Carballo Gomez, Fidel Cruz Hernandez, and Russela Margarita Rivero Sarabia (collectively, "Plaintiffs") are Cuban doctors residing in Miami. Defendant Pan American Health Organization ("PAHO") is an international organization headquartered in Washington, D.C., that "promote[s] and coordinate[s] efforts of the countries of the Western Hemisphere to combat disease, lengthen life, and promote[s] the physical and mental health of the people." [ECF No. 9 ¶ 16 (quoting PAHO Const., art. 1)]. PAHO receives funding from its member countries and the United Nations. Defendants Joaquin Molina, Alberto Kleiman, and Individual Does Nos. 1–10 are PAHO directors.

According to the First Amended Class Action Complaint [ECF No. 9], Plaintiffs (and other Cuban doctors) were recruited into a Brazilian aid program under the terms of an agreement between PAHO, Brazil, and a Cuban organization called Sociedad Mercantil Comercializadora de Servicios Medicos Cubans SA. The program was called "Mais Medicos" and it sent foreign doctors to treat residents of lower income neighborhoods in Brazil. Under the agreement's terms, Brazil paid PAHO for Plaintiffs' services. PAHO then sent 85% of Brazil's payment to the Cuban government, kept 5% for itself, and paid the remainder to Plaintiffs—a paltry 10% of the total payment owed to them. Plaintiffs allege that, since 2013, PAHO has retained more than $75 million from this arrangement and Cuba has retained more than $1.3 billion, while Plaintiffs have received a fraction of what their services are worth.

Plaintiffs allege that their participation in Mais Medicos was equivalent to forced labor and human trafficking. The Cuban government allegedly recruited Plaintiffs using a combination of political and economic pressure, threats against family members, and other forms of intimidation

2

unique to Cuba's totalitarian government. Then, while in Brazil, Plaintiffs were subjected to restrictions that violated international labor laws, including being assigned a "minder" who would watch their movements, told to campaign in favor of Brazilian political parties that Cuba supported, and paid a fraction of what their services were worth. Plaintiffs point out that PAHO paid every non-Cuban doctor their entire salary, as opposed to the 10% that PAHO paid Plaintiffs, for the same work. Plaintiffs allege that they suffered harassment and intimidation for speaking out against Mais Medicos.

Plaintiffs further allege that PAHO and the entire international community were aware of the detrimental and abusive conditions that Plaintiffs faced as a result of this arrangement: The United States Department of State's reports on Cuban medical missions abroad, for example, say that Cuban doctors' participation in Mais Medicos and similar programs is tantamount to forced labor. [ECF No. 9 ¶ 26 (citing U.S. Dep't of State Diplomacy in Action; Cuba, Office to Monitor and Combat Trafficking in Persons, 2017 Trafficking in Persons Report, p. 143 (2017))]. And numerous international bodies, as well as PAHO's own internal auditors, have raised concerns about the way PAHO pays the Cuban doctors—or fails to do so. [*Id.* ¶ 30].

## II. Procedural History

Plaintiffs filed their class action complaint seeking to recover both their unpaid wages and damages. [ECF No. 1, *as amended by* ECF No. 9]. PAHO then specially appeared for the sole purpose of moving to transfer venue without waiving its other arguments as to immunity. [ECF No. 18, at 1]. PAHO's Motion to Transfer this Action to the District of Columbia (the "Motion") [ECF No. 18] raised two primary arguments: (1) that venue is wrong in the Southern District of Florida under 28 U.S.C. § 1406(a) because the FSIA's venue provision exclusively governs venue

3

for lawsuits against international organizations like PAHO, and (2) that venue here is otherwise inappropriate under the balancing requirements of 28 U.S.C. § 1404(a).

The Court referred the matter for all pretrial proceedings to Magistrate Judge Alicia Otazo-Reyes. [ECF No. 12]. Judge Otazo-Reyes held a hearing on the Motion and subsequently denied it. [ECF No. 40]. Judge Otazo-Reyes held that Section 1406(a) did not require transfer from the Southern District of Florida because Section 1391(c)(2) allows Plaintiffs to lay venue here through RICO's alternative venue provision. [*Id.* at 6–7]. She held that PAHO could not claim immunity from non-FSIA approved venues and that its arguments rested on state sovereign immunity cases that were inapposite because those cases arose in a different context and relied on different legal principles. [*Id.*] Judge Otazo-Reyes also held that Section 1391(f)'s terms were permissive, which allowed Plaintiffs to use Section 1391(c)(2) to reach RICO's alternative venue provision. [*Id.*] Finally, she held that venue in Miami was also proper under Section 1404(a). [*Id.* at 7–14].

PAHO appealed Judge Otazo-Reyes's Order. [ECF No. 42]. This Court held a hearing on PAHO's appeal on July 18, 2019, [ECF No. 45], and the matter is now ripe for review.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), district courts review objections to non-dispositive motions using the standards of "clearly erroneous" for factual findings and "contrary to law" for legal issues.[1] Under the contrary to law standard, the Court looks at a magistrate judge's legal conclusions to determine if she "fail[ed] to apply or misapplie[d] relevant statutes, case law, or rules of procedure." *U.S. ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 101 F.

---

[1] PAHO urges the Court to consider the Motion as dispositive and therefore subject to de novo review. 28 U.S.C. § 636(b)(1)(B) & (C). Whether a motion to transfer venue is dispositive remains an open question in the Eleventh Circuit. *See United States v. Dimaria*, No. 17-20898-CR, 2018 WL 1173094, at *1 n.2 (S.D. Fla. Mar. 6, 2018). The Court declines to answer it, however, because the decision remains the same irrespective of the standard used.

4

Supp. 3d 1280, 1281 (S.D. Fla. 2015) (quoting *Merrett v. Liberty Mut. Ins. Co.*, No. 10-cv-1195-J-34MCR, 2013 WL 5330258, at *1 (M.D. Fla. Sept. 23, 2013)).

## DISCUSSION

PAHO challenges solely the portion of Judge Otazo-Reyes's Order relating to transfer under Section 1406(a). *See* § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). PAHO argues that venue here is "wrong" because the FSIA requires that Section 1391(f) be the exclusive venue provision for cases against foreign states and, by extension, international organizations; and under Section 1391(f), venue is only proper in the United States District Court for the District of Columbia.

The Court agrees that transfer is warranted. Foreign sovereign immunity—the immunity from suit that Congress granted to foreign states by virtue of their sovereignty and codified in the FSIA—extends in its entirety to international organizations under the International Organizations Immunities Act, 22 U.S.C. §§ 288–288l ("IOIA"). That immunity includes not just the FSIA's provisions waiving immunity for certain types of activities that generate litigation ("whether" foreign states can be sued), but also its limitations on venues found in Section 1391(f) ("where" foreign states can be sued). Foreign states and international organizations can therefore only be sued in jurisdictions where Congress has specifically waived their immunity. Those exclusive venue waivers are set forth in Section 1391(f). And Section 1391(f) requires that venue be laid in the District of Columbia because it is the only proper venue for suit here.

## I. Foreign Sovereign Immunity Extends to International Organizations

This case centers on the relationship between foreign sovereign immunity and international organization immunity. The Court examines these concepts first.

### A. Foreign Sovereign Immunity and the FSIA

Congress enacted the FSIA to balance the common law's absolutist approach towards foreign sovereign immunity—that foreign states could never be sued in federal courts for any reason—with the "'widespread and increasing practice on the part of governments of engaging in commercial activities' [that] made it 'necessary' to 'enable persons doing business with them to have their rights determined in the courts.'" *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 764–66 (2019) (quoting Letter from Jack B. Tate, Acting Legal Adviser, Dept. of State, to Acting Attorney General Philip B. Perlman (May 19, 1952), reprinted in 26 Dept. State Bull. 984–85 (1952)) (discussing the FSIA's evolution). The result is a statute that presumes immunity and asks courts to determine whether the immunity has been waived through an exception. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1319–22 (2017); *see also* §§ 1604, 1603(a) (defining "foreign state" as "includ[ing] a political subdivision of a foreign state or an agency or instrumentality of a foreign state").[2]

The FSIA contains a "comprehensive[] and exclusive[] set of legal standards governing claims of immunity in every civil action against a foreign state." *Cassirer v. Kingdom of Spain*,

---

[2] Section 1602 further demonstrates Congress's intent to leave to the courts all future immunity determinations:
> The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts . . . Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

616 F.3d 1019, 1034–35 (9th Cir. 2010) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983)). Section 1604 states that "a foreign state *shall be immune* from the jurisdiction of the courts of the United States and of the States *except as provided* in sections 1605 to 1607 of this chapter." (emphasis added). By the FSIA's terms, federal subject matter jurisdiction entirely depends on whether "the foreign state . . . is [] entitled to immunity." *Theo. H. Davies & Co. v. Republic of Marshall Islands*, 174 F.3d 969, 973 (9th Cir. 1998); *see also Argentine Republic v. Armeada Hess*, 488 U.S. 428, 434 (1989) (noting that the "FSIA must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity" (quoting *Verlinden*, 461 U.S. at 493)).

Section 1605 contains the general exceptions to the jurisdictional immunity of foreign states, including waiver (either explicit or implicit), § 1605(a)(1), commercial activity, *id*. § (a)(2) & (3), property rights, *id*. §§ (a)(3) & (4), arbitration agreements, *id*. § (a)(6), admiralty, *id*. § (b), and terrorism, *id*. § 1605A. *See, e.g.*, *Argentine Republic*, 488 U.S. at 434 ("[T]he text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state . . . ."). No other statute waives foreign sovereign immunity or otherwise allows foreign states to be sued in federal court. *See, e.g.*, *id*. (holding that the FSIA was the sole basis for jurisdiction against a foreign state and rejecting claim against foreign state brought under Alien Tort Statute); *Southway v. Cent. Bank of Nigeria*, 198 F.3d 1210, 1216 (10th Cir. 1999) (holding that "the FSIA confers subject-matter jurisdiction upon the district court over civil RICO claims against foreign states, their agencies, and instrumentalities, *provided that* the commercial activity exception, or another exception contained in §§ 1605–07 of the FSIA applies") (emphasis added). Other sections define certain requirements for how foreign states are

7

to be sued, including (for example) how to serve, the time in which the state must respond, and default procedures. § 1608; *see also* §§ 1607–1610 (defining further requirements for how foreign states are to sue and be sued).

Even where a waiver of immunity exists, suit can only be brought in certain jurisdictions. *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 124–25 (2d Cir. 2017) (noting that FSIA restricts venues for actions against foreign states). Congress amended the general federal venue statute, 28 U.S.C. § 1391, to include a specific provision governing venue for actions against foreign states. *See* § 1391(f); *Argentine Republic*, 488 U.S. at 434 n.3 (noting contemporaneous adoption of Section 1391(f)); Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94–583, 90 Stat 2891, October 21, 1976, (amending federal venue statute to restrict federal venues for lawsuits against foreign states). Subsection (f) of Section 1391 defines the only four venues where an action against a foreign state "may" be brought. § 1391(f); *see Argentine Republic*, 488 U.S. at 434 n. 3. Federal courts have thus limited plaintiffs to both the FSIA's limited immunity exceptions and its specified venues. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 484–85 (2003) (Breyer, J., concurring in part and dissenting in part) (citing §§ 1330, 1391(f), 1441(d), 1606, 1608–1611) (noting that the FSIA guarantees certain protections including "procedural rights (related to . . . venue[)]"). By its terms, then, the FSIA defines both "when" immunity is waived and "how" lawsuits can be brought against foreign states. *Cassirer*, 616 F.3d at 1035 (quoting H.R. Rep. No. 94–1487, at 12, 1976 U.S.C.C.A.N. 6604, 6610).

### B. International Organization Immunity from Suit and the IOIA

The IOIA governs the immunity of international organizations within the United States. *See Int'l Refugee Org. v. Republic S.S. Corp.*, 189 F.2d 858, 861 (4th Cir. 1951) (quoting *Balfour, Guthrie & Co., et al., v. United States, et al.*, 90 F. Supp. 831, 833 (N.D. Cal. 1950)). It is similarly

8

premised on international legal principles of immunity and privilege. *See* Steven Herz, *International Organizations in U.S. Courts: Reconsidering the Anachronism of Absolute Immunity*, 31 Suffolk Transnat'l L. Rev. 471, 476 (2008) (noting that as "international organizations were understood to be creatures of international law and to enjoy international legal personality, their obligations under international law were narrowly circumscribed").

The parties do not dispute that PAHO qualifies as an international organization under the IOIA, nor that the IOIA governs PAHO's immunity from suit.[3] The initial dispute is, instead, over whether the IOIA's textual guarantee of the same "immunity from suit as enjoyed by foreign governments," § 288a(b), incorporates the FSIA's venue restrictions.[4]

As with any statutory interpretation analysis, the Court begins with the IOIA's text. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete.") (citations omitted). Only if the plain text is ambiguous should the Court look

---

[3] The Court notes that Plaintiffs have invoked subject matter jurisdiction under the FSIA's waiver, commercial activities, and international takings exceptions, § 1605(a)(1)–(3). *See* [ECF No. 9 ¶ 9]. Yet Plaintiffs then attempt to evade the FSIA's venue requirements because PAHO is an international organization, not a foreign state.

[4] Plaintiffs argue that "immunity from suit" refers solely to the "precise" ways foreign states can waive immunity by virtue of their actions, pointing to the FSIA's specified substantive waivers of immunity as the limited "exceptions" to foreign sovereign immunity. This, Plaintiffs argue, proves that Congress's exclusion of venue in the IOIA's text signals that it did not intend to extend FSIA's venue restrictions to international organizations. But, as discussed *infra*, "immunity" is not so limited. And on the other hand, PAHO's broad concept of "immunity" likewise suffers because its argument would directly link the definition of venue to immunity in a way that the text of the IOIA and relevant Supreme Court decisions simply do not support—connecting substance to procedure and process all under one umbrella of "substantive immunity." But each of these concepts are *not* immunities, nor are they necessarily "substantive." Rather, "immunity from suit" concerns whether a foreign state can be sued *and*, if so, where. Though perhaps a "hypertechnical[]" distinction, it is an important one. *See Employees of the Dep't of Public Health & Welfare v. Dep't of Public Health & Welfare*, 411 U.S. 279, 294 (1973) (Marshall, J., concurring in result).

to other sources to divine the legislature's intent behind the statute. *See Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 534 (11th Cir. 1994).

The IOIA applies to "public international organization[s] in which the United States participates . . . and which shall have been designated by the President through appropriate Executive order as being entitled to enjoy the privileges, exemptions, and immunities provided in [it]." § 288. As relevant here, the IOIA states that "[i]nternational organizations shall enjoy the status, immunities, exemptions, and privileges set forth in this section . . ." and goes on to list several specific privileges, such as the right of contract and to sue. § 288a.[5]

The next subsection governs the reach of international organization immunity:

> International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy *the same immunity from suit and every form of judicial process as is enjoyed by foreign governments*, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

§ 288a(b) (emphasis added).[6] A plain reading of this unambiguous text indicates that international organizations enjoy the same immunity from suit enjoyed by foreign governments. *Id*. The

---

[5] The provision states:
> International organizations shall enjoy the status, immunities, exemptions, and privileges set forth in this section, as follows:
> (a) International organizations shall, to the extent consistent with the instrument creating them, possess the capacity--
>     (i) to contract;
>     (ii) to acquire and dispose of real and personal property;
>     (iii) to institute legal proceedings.

§ 288a.

[6] Although the IOIA extends to international organizations "the same immunity from . . . every form of judicial process[,]" the parties agreed at the hearing that "judicial process" would not include venue. So does the Court. "Judicial process" refers to the "proceedings in any action" that make up the mechanics of a case. *See* 72 C.J.S. *Process* § 2, at 589 (1987) (noting that process "may be defined as the means whereby a court compels a compliance with its demands . . . [and] varies according to the context, subject matter, and spirit of the statute in which it occurs"). Bolstering this conclusion are the FSIA's specific provisions for service of foreign states, answer, default, summons, counterclaims, and property attachment—the mechanics of litigating a case

remaining substantive portions of the statute are brief, serving to directly and repeatedly link the scope of international organization immunity to that of foreign governments.[7] § 288a(a)–(d); *see Broadbent v. Org. of Am. States*, 628 F.2d 27, 30, 32 (D.C. Cir. 1980) (noting that the IOIA grants "the same" immunity to qualifying international organizations as that bestowed on foreign governments and gives the President the ability to "withdraw or restrict the immunity and privileges thereby conferred").

However, the IOIA's plain language does not define "immunity from suit" or reveal whether that term includes venue restrictions. So, left without a clear answer in the text, the Court next turns to its structure and purpose. *See, e.g.*, *Gundy v. United States*, __ U.S. __ , 139 S. Ct. 2116, 2126 (2019), *reh'g denied,* 205 L. Ed. 2d 378 (Nov. 25, 2019) (noting that the "fundamental" approach to statutory interpretation includes reading statutory text in its "context and . . . the overall statutory scheme[,]" as well as its "history [and] purpose to divine the meaning of language" (quoting *Nat'l Assn. of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) and *Maracich v. Spears*, 570 U.S. 48, 76 (2013))); *see also United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1224

---

against a foreign state to which the IOIA's immunity from judicial process refers. *See, e.g.*, §§ 1607–1610.

[7] Plaintiffs argue that Section 288a(d) provides persuasive textual evidence that Congress did not intend to link all procedural rules for suits against international organizations to those against foreign states. Not so. Section 288a(d) specifically governs customs and tax considerations and the procedures referenced are those that govern customs, duties, and internal revenue taxes—things that are completely distinguishable from substantive and procedural rights. *See* § 288a(d). As such, subsection (d) does not by its text limit the "immunity from suit" granted in subsection (b). And it does not demonstrate Congress's intent to limit "immunity from suit," because, as discussed *infra*, sovereign immunity has a much broader common law and historical background of which Congress was aware before drafting the statute. *See Morissette v. United States*, 342 U.S. 246, 263 (1952) ("And where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); *see also Cannon* v. *Univ. of Chicago,* 441 U.S. 677, 696–97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law . . . .").

11

(11th Cir. 2012) (using context and statutory scheme to determine what statute's use of "person" meant as plain text did not resolve the term's meaning on its face).

The Supreme Court recently explained the scope of the IOIA's grant of immunity in *Jam v. International Finance Corporation* through such an examination. In that case, the plaintiffs sued the International Finance Corporation ("IFC") for damages caused by pollution from an IFC-subsidized coal power plant. 139 S. Ct. at 767. The IFC raised an immunity defense, arguing that international organizations like the IFC were entitled to absolute immunity because that was the immunity extended to them when the IOIA was first enacted. *Id*. The Supreme Court disagreed. It held that the "[IOIA] grants international organizations the 'same immunity' from suit 'as is enjoyed by foreign governments' at any given time." *Id*. at 772. "Today, that means that the [FSIA] governs the immunity of international organizations."[8] *Id*.

The Supreme Court's discussion in *Jam* is instructive both in its holding and analysis: The structure of the IOIA "link[s] the immunity of international organizations to that of foreign governments, so as to ensure ongoing parity between the two." *Jam*, 139 S. Ct. at 768. *Jam* also clarified that "immunity" is "not a term of art with substantive content . . . [but] rather a concept" that courts must consider with reference to "the law . . . as it exists whenever a question under the statute arises." *Id*. at 769–70 (citing J. Sutherland, Statutory Construction 5207–5208 (3d ed. 1943)). To understand what the IOIA's "immunity from suit" means, the Court must follow the Supreme Court's instructions to "refer[] to the rules governing foreign sovereign immunity" and relevant immunity case law. *Jam*, 139 S. Ct. at 770. This means that the Court must look to the current understanding of the FSIA, foreign sovereign immunity, and the case law that explains

---

[8] As such, it does not matter that PAHO is not a "foreign state" nor an "agency or instrumentality of a foreign state," as Plaintiffs suggest. *See* § 1603(a). The immunity extended is one and the same.

12

how sovereign immunity works to determine if venue restrictions are incorporated into the congressional grant of immunity to foreign states and international organizations.

## II. Venue Defines "Where" Congress has Waived Immunity from Suit

### A. "Immunity from Suit" Includes Venue

The parties agree that venue is distinct from the jurisdictional question of whether immunity is waived. Venue is "[t]he proper or a possible place for a lawsuit to proceed." *Venue*, Black's Law Dictionary (19th ed. 2019). Improper venues are therefore "place[s] or court[s] where jurisdiction is not authorized under a statute . . . ." *Improper Venue*, Black's Law Dictionary (19th ed. 2019). Case law recognizes that venue is neither a substantive merits consideration nor a jurisdictional one: It is a procedural right that must be satisfied before a court can exercise its jurisdiction over the merits of a case. *See, e.g.*, *Brown v. Pyle*, 310 F.2d 95, 96 (5th Cir. 1962); *see also Bibiano v. Lynch*, 834 F.3d 966, 970–73 (9th Cir. 2016) (citing *Rodriguez-Roman v. I.N.S.*, 98 F.3d 416, 424 (9th Cir. 1996)) (declining to determine whether lack of venue deprives a court of subject matter jurisdiction). And in the standard course, venue would not implicate immunity because there is no immunity to waive unless the defendant is a sovereign entity entitled to it in the first place.

The Court finds instructive case law from the state sovereign immunity context. State sovereign immunity, which parallels foreign sovereign immunity, grants states absolute immunity from suit unless an express waiver exists. *See Franchise Tax Bd. of California v. Hyatt*, __ U.S. __ , 139 S. Ct. 1485, 1493 (2019) (citing The Federalist No. 81, at 487); *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). "[T]he problems of federalism inherent in making one sovereign appear against its will in the courts of the other" create unique jurisdictional and venue concerns in state sovereign immunity cases. *Pennhurst State*

13

*School & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984) (quoting *Employees of the Dep't of Public Health & Welfare v. Dep't of Public Health & Welfare*, 411 U.S. 279, 294 (1973) (Marshall, J., concurring in result). State sovereign immunity cases concern whether a state is sued in a proper forum (state or federal), not which federal forum is proper (as here). *See, e.g.*, *Employees*, 411 U.S. at 298. But these cases remain instructive here because the same underlying principle applies: A legislature must waive sovereign immunity within a forum before suit can be brought there.

Sovereign immunity "reduce[s]" "a litigant's choice of forum[,]" a practice that "has long been understood to be a part of the tension inherent in our system of federalism," and one necessary to protect state sovereignty. *Pennhurst*, 465 U.S. at 123 (quoting *Employees*, 411 U.S. at 298); *see also Employees*, 411 U.S. at 298 (noting that whether a legislature has waived a state's immunity from suit within a forum is a routine and "hypertechnical" question of federalism). As such, the Supreme Court has held that "issues of venue are closely related to those concerning sovereign immunity" because "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."[9] *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 308–09 (1990) (emphasis in original) (quoting *Pennhurst,* 465 U.S. at 99) (holding that Congress had waived state immunity where venue provision of statute "expressly refer[red] to and qualifie[d] the more general consent to suit provision").

---

[9] Plaintiffs try to draw a distinction here, arguing that *Pennhurst* in fact created a two-prong test: that first the Court must ask whether jurisdiction is proper *before* asking where venue is proper. [ECF No. 43, at 7–8]. Under Plaintiffs' argument, where venue is proper comes into play only *after* jurisdiction has been established—in other words, after the Court has determined that one of FSIA's specified exceptions to immunity applies. Plaintiffs' strained reading of *Pennhurst* defies its plain text. The logical reading of *Pennhurst* is that the immunity question encompasses *both* "whether" and "where" because legislatures must expressly define federal venues for suit in order to draw a state into suit in federal court.

When faced with a question of what venue is proper in cases implicating sovereign immunity, courts must therefore ask whether a sovereign's immunity has been waived within a certain venue, as venue itself is not a "substantive immunity" from suit. *See Employees*, 411 U.S. at 294 (1973) ("The issue is not the general immunity of the States from private suit—a question of common law—but merely the susceptibility of the States to suit before federal tribunals"). Where immunity has not been waived in a venue where a lawsuit is initiated, sovereign defendants may move to transfer from a forum where the legislature (federal or state) has not waived immunity to one where it has. *See* Fed. R. Civ. P. 12(b)(3); *e.g.*, *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 395 n.7 (S.D.N.Y. 2009) (noting that foreign official waived FSIA venue argument by not asserting it prior to or along with his responsive pleadings).

Following these principles, the Court holds that the FSIA limits both the substantive waivers of foreign sovereign immunity ("whether" the foreign state can be sued) and the venues proper for suit ("where" the foreign state can be sued), because both "whether" and "where" are features of foreign sovereign immunity. *See Pennhurst,* 465 U.S. at 99–100. And as foreign sovereign immunity extends in its entirety to international organizations, *see Jam*, 139 S. Ct. at 769, international organization immunity must necessarily encompass Section 1391(f)'s venue restrictions.

### B. Section 1391(f) is Exclusive

The Court must next determine whether the FSIA's venue provision, Section 1391(f), provides the exclusive venues for actions against foreign states and, by extension, international organizations. Plaintiffs contend that Section 1391(c)(2) broadens their choice of venues. The Magistrate Judge agreed. This Court does not.

Section 1391 "is the general federal venue statute; its provisions apply in a civil action not founded solely on diversity of citizenship 'except as otherwise provided by law.'" *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 587 (9th Cir. 1991) (quoting 28 U.S.C. § 1391(b)). Section 1391(f) limits suits against foreign states to one of four venues:

> A civil action against a foreign state as defined in section 1603(a) of this title may be brought–
> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
> (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;
> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).

The parties dispute whether Section 1391(f)'s use of the word "may" requires parties to use Section 1391(f) exclusively when dealing with foreign states or whether it allows parties the choice of any venue provision within Section 1391. PAHO contends that Section 1391(f) is mandatory, excluding all other venues, and Congress's use of "may" simply refers to a party's ability to choose which of the four subsections applies to her case. Plaintiffs counter that "may" is permissive, allowing a party to bring an action against a foreign state in either the Section 1391(f) venues *or* any other venue that federal law allows under Section 1391(c)(2).

Courts uniformly agree that PAHO's reading is correct: Section 1391(f) controls venue in every case where a foreign state is named as a defendant.[10] *E.g.*, *Mobil Cerro Negro, Ltd.*, 863

---

[10] While the Court recognizes that some cases are brought against foreign states outside of Section 1391(f)'s restrictions, typically under Section 1605A, those cases often go unanswered and result in default judgments. Accordingly, venue is not challenged in those circumstances.

F.3d at 104 (FSIA's "venue requirements are set forth in 28 U.S.C. § 1391(f)"); *see also Verlinden*, 461 U.S. at 480 (noting that Congress specified venue requirements under the FSIA). And the legislative history supports this interpretation because Congress added Section 1391(f) to the general venue statute when enacting the FSIA, implying that federal venue was to be controlled by the FSIA. *See* Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (noting amendment to federal venue statute). Likewise, courts have accepted Section 1391(f) as laying venue for suits against international organizations (though, as Plaintiffs point out, no other case involved a dispute over Section 1391(f)'s applicability). *See, e.g.*, *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1349–50 (11th Cir. 1982) ("The parties agree that 28 U.S.C. § 1391(f) controls the question of venue since Harris seeks to invoke jurisdiction under [the FSIA].").

Under this reading, a litigant "may" bring suit against a foreign state in any one of Section 1391(f)'s four venues as applies to her case. *See Altmann v. Republic of Austria*, 317 F.3d 954 972 (9th Cir. 2002) (noting that Section 1391(f)'s venue provisions are "alternative venue provisions" for suits against foreign states), *opinion amended on denial of reh'g*, 327 F.3d 1246 (9th Cir. 2003), and *aff'd on other grounds*, 541 U.S. 677 (2004). This does not mean that a litigant "may" choose one of the six different venue provisions in Section 1391 in which to lay her suit. *Cf. Igwe v. City of Miami*, No. 1:15-CV-21603, 2016 WL 7671370, at *6 (S.D. Fla. Sept. 29, 2016) (where Congress enacted newer statute with permissive language to govern whether certain claims "may" be brought in state court, structure of statutes indicated that permissive language controlled over original statute requiring that the same actions "shall" be brought in federal court). This understanding aligns with the structure of Section 1391, which sets venues for specific types of cases. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) ("The

17

whole-text canon refers to the principle that a 'judicial interpreter [should] consider the entire text, in view of its structure and of the physical and logical relation of its many parts,' when interpreting any particular part of the text." (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 24, at 167 (2012))); *see also* §§ 1391(d) (venue for corporate residency), (e) (venue for federal employees and officers), & (g) (multiparty litigation). And it aligns with the congressionally-determined policy that foreign sovereign immunity exists to protect foreign states from suit except in defined forums and circumstances.

### C. RICO does not Supersede Section 1391(f)

Plaintiffs' final argument is that RICO's venue provision supersedes Section 1391(f). *See* 18 U.S.C. § 1965 (defining venue for civil actions under RICO). Plaintiffs reason that RICO's alternative venue provision applies here because Section 1391's introductory provision states that the Section "shall" control venue in all actions "except as otherwise provided by law." § 1391(a). Plaintiffs argue Section 1391(a) therefore encompasses RICO's alternative venue provision, which supersedes any exclusivity implied by the FSIA and Section 1391(f).

But this argument fails to account for the sovereign immunity principles previously discussed, namely that Congress has expressly waived foreign sovereign immunity only in Section 1391(f)'s four forums.[11] *See Jam*, 139 S. Ct. at 769 (federal courts use the reference canon "to harmonize a statute with an external body of law that the statute refers to generally"). Allowing Plaintiffs to subvert congressional intent and use Section 1391(a) to apply venue provisions of a different statute would render Section 1391(f) superfluous. *See Rubin v. Islamic Republic of Iran*,

---

[11] Civil RICO claims only extend to foreign states if an FSIA exception applies that waives immunity and confers subject matter jurisdiction. *See Southway*, 198 F.3d at 1216 (holding that commercial activity waiver conferred subject matter jurisdiction that enabled the plaintiffs to bring civil RICO claim). It thus stands to reason that the FSIA's venue restrictions would also apply, as foreign sovereign immunity encompasses venue restrictions.

18

138 S. Ct. 816, 824 (2018) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009))). Indeed, the logical extension of Plaintiffs' argument is that *any* extra venue provision in *any* federal statute would then apply to foreign states—expanding the reach of district court jurisdiction to suits in courts where Congress did not waive foreign sovereign immunity. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (noting that Congress does not "hide elephants in mouseholes" when altering the details of a longstanding body of law).

Therefore, the Court finds that Plaintiffs cannot use RICO's venue provision to establish venue in the Southern District of Florida.

### D. Venue is Proper in the District of Columbia

All that remains is to determine whether venue is proper in the Southern District of Florida under the four venues Section 1391(f) provides. The Court agrees with PAHO that it is not.

First, this is not a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." § 1391(f)(1). Although some plaintiffs reside in the Southern District of Florida, none of the events took place here and there is no property at issue here. *Id*. Second, PAHO possesses no "vessels or cargo" here, nor does Plaintiffs' lawsuit involve such items. § 1391(f)(2).

Third, PAHO is not "licensed to do business or is doing business" in the Southern District of Florida. § 1391(f)(3). Plaintiff's sole allegation on this front is that PAHO "was engaged in service activities in Florida through its University of Miami Medical School programs." [ECF No. 9 ¶ 9]. This is not enough. Plaintiffs do not assert that PAHO is licensed to do business in this District, nor how the service activities fit Section 1391(f)(3)'s "doing business" standard. *See*

19

*Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Producion*, 832 F.3d 92, 118 (2d Cir. 2016) (Winter, J., concurring) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)) ("[Section 1391(f)(3)'s 'doing business' language] suggests that some substantial activity of a commercial nature be engaged in by the defendant and that the activity be more than an isolated instance"); *Altmann*, 317 F.3d at 972 (suggesting that "doing business" is synonymous with "commercial activity").

All that remains is the United States District Court for the District of Columbia. § 1391(f)(4). This case belongs there.

\* \* \*

The Court shall sustain PAHO's Objections and grant the Motion to Transfer Venue. The Court makes no determination on whether PAHO is immune from suit under FSIA's substantive waivers of immunity, nor whether it has waived that defense. Those questions are for the District Court in the District of Columbia, as PAHO has not presented those arguments here.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Objections to and Appeal from Magistrate Judge's Denial of Motion to Transfer this Action to the District of Columbia (the "Objections") [ECF No. 42] are **SUSTAINED**. The Motion to Transfer Venue [ECF No. 18] is **GRANTED**. This action shall be transferred to the United States District Court for the District of Columbia for all further proceedings.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of April, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE